UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GENARO L.-C.,[1]
(A-Number: 234-885-967)

           Petitioner,

   v.

SERGIO ALBARRAN, et al.,

           Respondents.

No.  1:26-cv-01795-JLT-EGC (HC)

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PETITION FOR WRIT OF HABEAS CORPUS

[ECF No. 1]

[21-DAY OBJECTION DEADLINE]

Petitioner Genaro L.-C. is a national and citizen of Mexico who entered the United States without inspection on or about April 1, 1999. (ECF No. 1 at 2.) He was not encountered by Border Patrol at that time. (ECF No. 1-2 at 3.) He has been living in the United States since then. (ECF No. 1 at 2.) Since his entry to the United States, he married his spouse, and together they filed for adjustment of status with USCIS. (ECF No. 1-2 at 3.) Upon review of Petitioner's request for adjustment of status, an immigration investigation was conducted which revealed Petitioner had entered illegally at an unknown place and time. (*Id*.)

In addition, a criminal records check was conducted. (*Id*.) The records check revealed two prior convictions. On June 28, 2005, he was convicted of driving under the influence of alcohol or

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

drugs and driving without a license. (*Id*.) On February 5, 2025, he was convicted of driving under the influence of alcohol and driving on a suspended license. (ECF No. 7 at 20.) Respondents also note two arrests for other crimes, but those charges were later dismissed. "The contention that an arrest, without more, constitutes evidence of criminal activity is without merit." *Miao v. Chestnut*, 1:26-cv-01271-KES-SKO (HC) (citing *Duncan v. California*, No. S-04-523 LKK/PAN, 2006 WL 1883385, at *2 (E.D. Cal. July 7, 2006)).

Based on the investigation, a warrant for Petitioner's arrest was prepared. (ECF No. 1-2 at 2-3.) On June 23, 2025, Petitioner reported for his scheduled interview on his request for adjustment of status. (*Id*.) He was issued a notice to appear and charged as removable under Immigration and Nationality Act §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (ECF Nos. 1-3 at 2; 7 at 27.) Petitioner was then arrested by Immigration and Customs Enforcement ("ICE") and taken into custody. (ECF No. 1-2 at 3.) He has remained in custody since then.

On July 3, 2025, Petitioner requested a bond hearing. On July 15, 2025, a bond hearing was held before an immigration judge pursuant to 8 U.S.C. § 1226(a). (ECF No. 1-4 at 2.) The immigration judge denied release on bond after determining Petitioner did not meet his burden to establish that he was not a danger to the community. (ECF No. 1-4 at 2-3.) On October 21, 2025, an immigration judge denied Petitioner's application for adjustment of status and ordered him removed to Mexico. (ECF No. 7 at 31.) Petitioner appealed to the Board of Immigration Appeals and the appeal is currently pending. (ECF No. 7 at 35, 40.)

On March 5, 2026, Petitioner filed the instant habeas petition challenging his detention, as well as a motion for temporary restraining order. (ECF Nos. 1, 3.) On the same date, the District Court denied the motion as untimely and directed Respondents to file a response. (ECF No. 6.)

On April 4, 2026, Respondents filed a response to the petition. (ECF No. 7.) Petitioner did not file a reply to the response.

I.      JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the

2

Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

II.     DISCUSSION

        A.  Detention Authority

        Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), and therefore, detention is mandatory until Petitioner is removed. Respondents argue that Petitioner remains an "applicant for admission" despite having lived in the United States for the past 27 years. (ECF No. 7 at 3-4.) Petitioner notes he was given a bond hearing pursuant to § 1226 on July 15, 2025, but this was before Respondents changed their interpretation of how §§ 1225 and 1226 apply to noncitizens. Petitioner states that any new request for bond hearing would be denied for lack of jurisdiction based on the recent Board of Immigration Appeals decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA, Sept. 5, 2025). Given Respondents' position in their answer that Petitioner's current detention is mandatory under § 1225(b)(2)(A), Petitioner's argument has merit.

        The instant case is similar to other cases which this Court has previously decided. *See R.P.V. v. Wofford*, No. 1:26-CV-01010 JLT EPG (HC), 2026 WL 494748, at *2 (E.D. Cal. Feb. 23, 2026); *Velasco v. Chestnut*, No. 1:26-CV-01200 JLT SKO (HC), 2026 WL 542242 at *1 (E.D. Cal. Feb. 26, 2026); *Lopez v. Chestnut*, No. 1:26-CV-01455-JLT-EPG, 2026 WL 640887 at *1 (E.D. Cal. Mar. 6, 2026). In those cases, the Court determined that Respondents' position that Petitioner was subject to mandatory detention under § 1225(b)(2) was incorrect. The Court concluded that persons in Petitioner's situation, i.e., those who entered the United States without permission long ago and have resided here for many years without interacting with the immigration system, are not subject to mandatory detention under § 1225(b)(2). In line with other cases in this circuit, persons in Petitioner's position are subject to discretionary detention under 8 U.S.C. § 1226(a). *See, e.g., Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025

3

WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025); *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553 (E.D. Cal. Jan. 8, 2026). Thus, the Court recommends granting the petition on Petitioner's claim that his detention is governed by § 1226(a), not § 1225(b)(2)(A).

B. Procedural Due Process

Having determined that § 1226(a) informs the nature of Petitioner's detention, the court next addresses Petitioner's procedural due process rights. As in previous cases presenting the same issues, the Court would normally order Respondents to provide a bond hearing pursuant to § 1226(a). *See, e.g., R.P.V. v. Wofford,* 2026 WL 494748, at *2 (E.D. Cal. Feb. 23, 2026) (finding bond hearing appropriate where record indicated the detainee had one conviction for driving under the influence); *Lopez v. Chestnut*, No. 1:26-CV-01455-JLT-EPG, 2026 WL 640887 (E.D. Cal. Mar. 6, 2026). Here, the parties acknowledge that Petitioner was already given a bond hearing pursuant to § 1226(a) on July 15, 2025. The question then is whether due process entitles Petitioner to a second hearing.

In evaluating a due process claim in immigration detentions like Petitioner's, the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Like *Rodriguez Diaz*, Petitioner is subject to § 1226(a) detention, and he was given a bond hearing on July 15, 2025, pursuant to his request under § 1226(a). Thus, the Court finds application of the *Mathews* test in this case appropriate.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger

and any risk of flight to avoid removal. A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). Here, Petitioner has been detained for 11 months. Prior to detention, he was at liberty for 27 years. This permitted him to live with his family, work, and contribute to his community. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In addition, Petitioner's detention period is comparable to the lengths of detention considered in other cases to be "prolonged." *See, e.g., Rodriguez Diaz*, 53 F.4th at 1207 (citing, inter alia, *Diouf v. Napolitano,* 634 F.3d 1081, 1091 (9th Cir. 2011) (detention over one year).

In *Rodriguez Diaz*, the Ninth Circuit further held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id*. at 1213. In this case, Petitioner was given a bond hearing on July 15, 2025, where the immigration judge determined Petitioner presented an unreasonable risk of danger to the community. Thus, although Petitioner has a strong interest in his liberty, it does not outweigh the government's interest in protecting the public given an immigration judge has already determined that Petitioner presents a danger to the community. In his petition, Petitioner calls the immigration judge's conclusion into question, but that issue is not properly before this Court. *See* 8 U.S.C. § 1226(e); *Sales v. Johnson*, 323 F. Supp. 3d 1131, 1138-39 (N.D. Cal. 2017) ("To the extent that Petitioner asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is unreviewable."). The Board of Immigration Appeals is the proper venue to challenge the immigration judge's findings. Thus, the first interest tips in favor of the government.

In the second factor, the Court considers "the risk of an erroneous deprivation of

5

[Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where a detainee "has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3. In this case, however, Petitioner received a bond hearing where an immigration judge inquired into his detention and concluded he posed a risk of danger. And although this inquiry took place almost a year ago, the Ninth Circuit has noted that "'duration alone' cannot 'sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations.'" *Rodriguez Diaz*, 53 F.4th at 1212 (citing *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018)). In *Rodriguez Diaz*, the Ninth Circuit declined to order a second bond hearing noting that "'due process does not, of course, require two hearings.'" 53 F.4th at 1212 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 n.14 (1970)). *Rodriguez Diaz* held that a section 1226(a) detainee who had also received an earlier bond hearing before an immigration judge could not tip this second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. So too here. Under Section 1226(a), Petitioner can request another bond hearing before an immigration judge should there be a change in circumstances. To the extent that Petitioner takes issue with the immigration judge's decision, he has appellate options available to him which further mitigate the risk of an erroneous deprivation of rights. *Id*. at 1209.

Petitioner also argues that the burden of proof was improperly placed on him. Yet, "[t]he Ninth Circuit has upheld the constitutionality of procedures under § 1226(a) – which governed Petitioner's detention at the time – placing the burden on the non-citizen." *Herrera v. Mayorkas*, Case No. C24-1933-JNW-MLP, 2025 WL 2382093, at *7 (W.D. Wash. May 19, 2025) (*Report & Recommendation, adopted* 2025 WL 2380669, at *1 (W.D. Wash. Aug. 15, 2025) (citing to *Rodriguez Diaz*, 53 F.4th at 1212). "[S]uch burden-shifting would [not] be constitutionally necessary in all, most, or many cases. There is no reason to believe that, as a general proposition, the government will invariably have more evidence than the [non-citizen] on most issues bearing

6

on alleged lack of future dangerousness or flight risk." *Rodriguez Diaz*, 53 F.4th at 1212.

Thus, the Court concludes that the probable value of offering a second bond hearing is low. The second factor favors the government.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal history and a determination by an immigration judge that he posed a risk of danger.  Given (1) the government's interests in protecting the public and assuring Petitioner's presence for removal, and (2) the fiscal and administrative burdens on the government in conducting another bond hearing, the government's interests outweigh Petitioner's interests.

On balance, the *Mathews* factors weigh in the government's favor and outweigh Petitioner's interest in a second bond hearing. Should circumstances change, Petitioner is free to request a subsequent custody hearing. Accordingly, the Court recommends denying Petitioner's procedural due process claim.[2]

---

[2] Petitioner also claims that the manner in which he was detained violated his due process rights. Petitioner notes that § 1226(a) provides that a noncitizen may be arrested pursuant to this section by issuance of a warrant by the Attorney General. He argues no such warrant was issued. However, the record shows a warrant for arrest was prepared in conjunction with a notice to appear after the immigration investigation revealed Petitioner had not been admitted to the United States, and he had suffered two prior convictions. (ECF Nos. 1-2 at 2-3; 1-3 at 2-3.) In addition, 8 C.F.R. § 236.1(b) provides that a noncitizen "may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest," and "[a] warrant of arrest my be issued" by various immigration officers including "immigration enforcement agents." *See* 8 C.F.R. § 287.5(e)(2)(lii).

C.    Substantive Due Process

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746 (citations omitted).

In the criminal context, the Ninth Circuit has held that "[a] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*, 481 U.S. at 747). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (internal citation omitted), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

Petitioner contends that his continued detention is irrational and arbitrary. He argues that his two prior convictions for driving under the influence do not merit a finding that he poses an unreasonable risk of danger such that no amount of bond can ensure the public's safety. Again, the Court cannot reweigh the evidence supporting the immigration judge's decision. Such a challenge must be brought before the Board of Immigration Appeals. *See* 8 U.S.C. § 1226(e).

The Court finds that Petitioner fails to establish that his detention serves "no regulatory purpose that can rationally be assigned to the detention" or that his detention is "excessive in relation to its regulatory purpose" such that the Court may conclude the detention is punitive. *Torres*, 995 F.3d at 708 (citing *Salerno*, 481 U.S. at 747). Petitioner does not allege in his papers that his detention was motivated by any intent of Respondents to punish him. As to the fact of his detention, the Supreme Court has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

8

Accordingly, the undersigned will recommend that the Court deny Petitioner's petition as to his substantive due process claim.

III.     CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court recommends that the petition for writ of habeas corpus be GRANTED IN PART as to Petitioner's challenge to which authority his detention is governed, and DENIED IN PART as to his claimed violations of procedural and substantive due process.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **May 25, 2026**                       _____
                                                 UNITED STATES MAGISTRATE JUDGE